case is Nalco Company LLC versus Laurence Bonday 22-13546. I'll give you all a chance to get set up. Mr. Meyer, I see that you've reserved two minutes for rebuttal. You may proceed when you are ready. Good morning, Your Honors, and may it please the Court. In granting Nalco's motion to vacate the arbitration award in favor of Mr. Bonday, the District Court erred in three respects. First, the District Court held that it could review a preliminary procedural order establishing the claims that were submitted to arbitration. Second, the District Court held that it could review de novo whether or not Mr. Bonday's ERISA claim was arbitrable, contrary to this The District Court erroneously concluded that an arbitration clause that makes arbitrable any and all federal statutory claims without limitation, except for two specifically identified sets of federal statutory claims, those arising under the National Labor Relations Act and those that are non-arbitrable under Dodd-Frank, it concluded under such a clause that Mr. So I'll start with the first of those issues. The arbitrator issued a preliminary procedural order that did several things. It established Mr. Bonday's claims. It held that the arbitrator had to liberally construe Mr. Bonday's demand for arbitration in light of his pro se status and held that he had raised both a claim for the breach of the severance plan as well as statutory age discrimination claims and discrimination claims under ERISA and found those latter two sets of claims to be arbitrable. This was a preliminary procedural order. It then established a briefing schedule allowing NALCO time to present witness lists for a subsequent evidentiary hearing. Your Honors, if these kinds of preliminary procedural orders are reviewable in court, the speed and efficiency with which this court and the Supreme Court have held that the Federal Arbitration Act aims to create will be eviscerated. This is an order that is just designed to clarify precisely the claims that are submitted for arbitration. I'm going to fast forward a little bit to some things I'm interested in. What relief did he ultimately get from the arbitrator, your client? He was awarded roughly $130,000 pursuant to a Section 510 claim under ERISA. Right, and that was for just and fair, it was essentially for the damages for having been discriminated against, correct? That's correct. What relief did he ask for in his claim and specifically the demand for arbitration? He sought roughly that same amount of money that he felt. That amount of money? Not exactly that same amount of money, that's correct. Okay, so what did he ask for? Sorry. He, in the demand for arbitration, he requested... Wasn't it all about severance? No, your Honor. I think it was not all about severance. Well, the relief... He requested 36 weeks of salary. That's right. In connection with that, he wanted a salary that wasn't paid. That all had to do with the severance. Your Honor, he felt that he was entitled to severance, but he attached a three-page description that he captioned the nature of the claim. The AAA intake form is a preprinted form. He wrote three sentences, which was all he was allowed on the preprinted form, and then directed the arbitrator's attention. I've read the entire thing. You're right that in 36-1 at page 3, which is the small box, he said, award me 36 weeks of salary per the policy. But then in the two or three-page written summary, and I'm looking at page 4 of Docket Entry 36-1, he repeats, I am requesting arbitration so that they follow the severance policy and award me 36 weeks of salary per the policy. And that's leading up to then the bullet points of the facts for why he gets the 36 weeks. Why is that not the clear relief that he is seeking? Your Honor, I think he clearly was seeking that relief. I don't think there's any question. I don't think anybody's used that he is seeking that relief. Okay, so then the question is, is the arbitrator allowed to award relief beyond that? Your Honor, I think the arbitrator issued equitable—the arbitrator, before any briefing, argument, evidentiary hearings, before anything had happened in this arbitration, the arbitrator clarified the claims that it thought were raised by Mr. Biden. I know what the arbitrator thought. I'm asking you. A district court is certainly entitled to look and see, and we are certainly entitled to look and see, this is actually what was claimed, and what you've now awarded relief on, your reading of it, is exceeded what was actually demanded. Well, Your Honor, I don't think that the—so first of all, I suppose there might have been an issue whether or not there should have been a motion or whether or not NALCO could have made a motion under Section 11 of the Federal Arbitration Act to modify the award to reduce it to the specific dollar value. Except that we've said maybe that's relief they could have sought, but Section 10, under the Exceeding Powers Clause, we've been clear that where relief is sought in excess of the relief that's requested, that is a basis to vacate for exceeding powers, have we not? Your Honor, that may be true. I'm not—NALCO has not raised that issue with respect to the dollar value that you— Well, I'm not talking about the dollar value. I'm talking about the relief. The relief is, I want 36 weeks, as Judge Joe Flatt has said very articulately, severance. They asked for severance. What he was awarded was damages for a cause of action related to discrimination. That's not the relief that he sought, is it? Your Honor, I think that is the relief that he sought in the arbitration. So I think this court has been clear, and this is perhaps the district court's errors, that it conflated on reviewing issues that are the subject of a final award without ever being addressed at any point in the arbitration. In this case, this was addressed during the arbitration. It was not, as Your Honor has correctly pointed out, fleshed out in the demand itself. But it was clearly the subject of argument as well as an evidentiary hearing that the arbitrator held. The arbitrator can be wrong. I mean, we're not entitled—no court is required to accept the determination of what it is. I understand that the arbitrator reviewed this and said, I see three claims. I've looked in the mirror. I've sprinkled some fairy dust on it, and there's three claims. I understand that the arbitrator, she did that. That doesn't mean that the district court, when reviewing whether the arbitrator exceeded her powers, is not entitled to look at the very same document and determine that I don't see the mirror and I don't see the fairy dust, and I only see one claim, and that is for 36 weeks of severance pay. Your Honor, I think this court's case law has said that the question of whether or not a relief that is granted in the—in a final award, whether or not that is the subject of the arbitration, that depends on whether or not the issue was raised at any point during the arbitration. I'm not talking about the subject of the arbitration. Maybe we're—you and I are in a terminology problem here, but what we have said is where the arbitrator grants relief that's not demanded, that that exceeds the arbitrator's powers. Have we not said that? Davis is the case. Yeah. Have we not said that in Davis? So, Your Honor, in that case, the issue is whether or not the attorney's fees— That's right. Yeah. So the issue there was that the attorney's fees at no point in the arbitration did anybody seek relief—seek that specific point. It was not demanded by—at any point. At any—but at any point. Right. And so in this case, that's not—that's not true. No, no. It was not— Counsel, as I understand it, your client never demanded a discrimination claim. He never demanded an ADA claim. He never demanded damages on those things. The arbitrator, on her own, said, I—again, going back to my mirror and the fairy dust—determined that is what it is. I am going to arbitrate it based on that, and then we're going to do that. Now, I'll put aside for the moment that there was a blanket objection to doing any of this. It all exceeded authority and outside jurisdiction. Let's put that aside for the moment. How is an arbitrator allowed to—you're telling me an arbitrator can just say, we're going to litigate a trademark claim here and a copyright claim here. And that's not reviewable because they said so? So your Honor, I think there's a couple of separate issues. So let's put aside to one issue—to one side the issue of whether or not a claim is arbitrable. So we're assuming we're talking about an arbitrable claim, so which would provide a, I think, in the abstract, a significant limit on what— I agree. Although I don't agree with you on the legal principle, I'll put that aside for the moment. Okay. So the—with respect to what happened here, what happened here was that after NALCO simply refused to engage with either the AAA in the first instance and then the arbitrator, the arbitrator then felt it necessary to issue what was just a preliminary order establishing the claims that it felt Mr. Bonday had raised. NALCO then waives its right to participate in the arbitration, explicitly knowing the claims it's going to face. The arbitrator then hears arguments from Mr. Bonday and hears evidence on those three claims. So the three claims are presented to the arbitrator. Your Honor is correct that the demand for arbitration itself does not say ERISA. But that's not what Davis says. Davis looks at whether or not at any point during the arbitration the litigants had asked for— Can you show me where in the record that there's a—that there was—that your client asked for relief on ERISA discrimination? Your Honor, I think—so we don't have a transcript for the— Right. I understand. But it was not demanded. I mean, she could hear evidence on anything. But that doesn't mean that it's not outside the demand that was there. I just don't understand how you can just amend or read in anything you want. What if she read in a copyright claim? So your Honor— She could award it on a copyright, even though the word copyright doesn't—isn't mentioned at all in the demand? So, your Honor, I think there's no question in my mind that your Honor is correct that she could not issue an award on something that had never come up during the course of the arbitration. But I also think that Davis is— For which your client did not seek relief on. That's the question. No, your Honor. I think he did seek relief for this. Where? During the hearing. You're telling me that. Where in the record is that? It's in the—I think, your Honor, it's in the final award in which— Mr. Bondi sought relief and demanded relief on eriso-discrimination. Not I read it in there and this is how I conducted the hearing. Is it your argument that you could go beyond the demand and the hearing advanced new claims? Your Honor, I think that the arbitrator is— I think the AAA— The arbitrator decides to hear some new things altogether, but not demanded, not the relief that eriso sought. Then grant an award on that. Your Honor, I think the AAA rule—I mean, the AAA rules would have allowed at the time the arbitrator issued this preliminary order, it would have allowed the arbitrator to simply say, you know, Mr. Bondi, do you wish to amend your demand to state this claim? In light of his pro se status, instead of simply asking him to amend his claim to state a claim for eriso explicitly, she just said, I understand him to be raising these claims and those claims were then presented during the evidentiary hearing and were the subject of the final award. So I think that they absolutely were claims that were presented. NALCO waived its right to be present at that hearing and I think that's— In other words, you could amend—NALCO sees the claim that was made and the relief sought and decides not to participate and as your point, having done that, they're not entitled to notice or anything else of what takes place at the arbitration hearing, where the relief sought entirely different. They waived that. Your Honor, I think that they received on November 23rd, the arbitrator issued—November 23rd, 2021, the arbitrator issues the order saying Mr. Bondi is raising these three claims. On November 24, NALCO notifies the arbitrator that it will not be with full knowledge that those are the claims it's facing, that it will not participate further in the arbitration. That is, I think, the third time that NALCO has indicated that it will not participate in the arbitration. And just briefly, Your Honor, I see I'm out of time, but if I can briefly answer your question. So if you look at the final award on page two of the final award, the heading is claimants asserted bases for his claim. And then we have the age of discrimination claim, the breach of contract claim, and the erisa claim. So I agree with Your Honor that the arbitrator does not say the words specifically, nor do we have a transcript that specifically says Mr. Bondi came in, but the award itself characterizes the erisa claim as the claimant's asserted basis for his claim. Thank you. Ms. Thorne. Good morning. May it please the Court. I'm Renee Thorne and I represent NALCO, the appellee. I'd like to start, Your Honors, with something that my esteemed colleague did not mention. He keeps referring to this preliminary order as procedural by the arbitrator. It was, in fact, an impermissible decision on arbitrability. And in our briefs, we've discussed at length why. So I want to challenge that a little bit because I actually happen to agree with your opposing counsel on this issue. And I'm going to tell you my thoughts on it, and I want you to tell me where I get it wrong. So we have a case, Terminex, which says that where an arbitration agreement says that it's to abide by the AAA rules, and where the AAA rules say that the arbitrator is entitled to make decisions based on validity, enforceability, and scope, that that is a clear and unmistakable acknowledgement on shifting that to the arbitrator, in other words, overcoming the default rule. You agree with that in principle. I think. But what you say in response is, well, there's some other language in the agreement that seems to indicate and take back that, because what we've said is where the agreement's in conflict with AAA, the agreement abides. And the agreement says, with regard to validity, enforceability, and I'm forgetting the third thing, but it's not scope. Revocability. Revocability. With regard to those three things, that is only for a court of competent jurisdiction. And that means that we've clearly and unmistakably have shifted the determination of the scope of arbitrability to the court. Do I have that wrong? That's your argument, right? That is our argument. You have it correct. Okay. Your opposing counsel responds, and this is where I think I'm persuaded, that we've been clear as recently as addicts, but we've been clear that there are some different things, there are different boxes. There's a validity box, there's an enforceability box, and then there's a scope box. And each of those things are different. They're not overlapping in the same. They are different and have different functions. And with regard to two of them, enforceability and validity, you have clearly and unmistakably said that that goes to the court. But as to scope, which is its own thing, that's silent in the agreement. And so what's not silent is the reference to the AAA rules that's incorporated in the agreement, and the AAA rules require or allow the arbitrator to make that determination. Why is that line of thinking wrong? Where am I wrong in there? With respect to... No, no. Tell me I'm wrong, please. Then you're wrong. You're wrong. Okay. Tell me why. First of all, the word scope, you are correct, does not appear in the delegation clause. But it does appear otherwise in the agreement. There is a provision in the agreement that literally is called scope of the arbitrator's authority. And the scope of the arbitrator's authority, I'll read it to you, is, quote, limited to the resolution of capital D disputes between the parties. There's no doubt that the... Let me be clear. I agree that a claim outside of the definition that you were about to read cannot be arbitrated. I agree. I think we all agree with that. The question is who gets to decide. It's the who decides question that's there. And I don't read that provision. And show me where it says that a court is the one that makes that call. Well, the capital D disputes, I think, is important because then you look at the definition and it defines what's a dispute and what is not a dispute. And it says what's not a dispute is enforceability, revocability, and validity. But I want to address your concerns about the lack of the inclusion of the word arbitrability, for instance. Or scope of arbitrability. Or scope. Okay. So we got the word scope limited. There's a limited scope. Your Honor. I just... I'm sorry to interrupt, but counsel, the problem is that sentence deals with who decides. So that sentence clearly says that enforceability, validity, and revocation, the court decides. That's unmistakable. And if the word scope was in there, we wouldn't be here or we would be here, but I would say you win and that would be it. But without it there, and without it there, that's a noticeable absence in my mind, especially where we have case law explaining the noticeable absence. And the provision you just cited, the claim provision of what this arbitration agreement is limited to, doesn't do it because it doesn't tell us who decides. So, assuming that to be the case, Your Honor, you referred to the addicts case, Mr. Bondi has referred only in this court, as we know, none of this was raised in the district court, to the addicts case and to the JPAY case. Those cases are actually very important here. In addicts, it is true that the court talked about different kinds of arbitration delegation clauses and different words used. The addicts court specifically held that if there are different readings of a delegation clause, then there's not clear and unmistakable evidence that the parties agreed to send the arbitrability issue to the arbitrator. But the JPAY case is actually really important here. In JPAY and in addicts, the courts both recognize that issues of arbitrability are referred to as unitary in nature and they are grouped, they are delegated as a group. And in JPAY, the court was discussing several different kinds of delegation agreements and it referred to what it called, quote, comparable language of other delegation clauses. And those other delegation clauses that the court very specifically referred to included use of the words like interpretation, applicability, formation, validity, enforceability, existence and termination as all encompassing valid delegations of arbitrability. And again, the court spoke in terms of arbitrability as being gateway issues. And counsel, I agree completely that if this, if you all were up here to say the agreement is not enforceable as a gateway issue, there's no doubt that that would have to be decided by a court. But scope is a separate and independent determination from is this a valid agreement? Is this an enforceable agreement? Or has the agreement been revoked by some other act? And I think JPAY tells us that we don't need magic words. JPAY found other delegation clauses that did not have the word scope in them. In fact, the delegation clause in JPAY, in addicts, none of those had the word scope in them. And what makes this case different than JPAY. The problem is they didn't have the Terminex language. That's the issue. They didn't have the Terminex language, Your Honor. I'm sorry. Terminex language, the language about the AAA. They did actually, Your Honor. Each of those had the same exact language that the AAA makes these determinations? In each of JPAY and addicts, the courts had, I'm sorry, the parties had the reference to the AAA rules, but they also each had a delegation clause in their agreements. But in each of those cases, the delegation clause harmonized with the rules because it was a clear delegation to the arbitrator. We don't have a situation where, as in this case, there is a reference to the rules, but a delegation clause, which claws it back, if you will, specifically attempting to arbitrate or to send arbitrability issues to the court. How is it not, if you're trying to harmonize all this stuff, exceedingly relevant that in those cases they all track the same language, but here the tracking explicitly excludes scope? Explicitly. Well, and again, I'd hate to be repetitive, Your Honor, but the JPAY court and the addicts court too, to a lesser extent, because it said it wasn't going to get into the, I think it called, I don't remember, the differences, the significant differences between the words. But the JPAY court is very clear that no magical words are included because the Supreme Court itself has referred to issues of arbitrability as a group, which is why ultimately the addicts court rejected the notion of splitting arbitrability issues into pieces parts. So it said to do so goes against the way delegation clauses usually work. And although they asked for the very same relief in addicts here that Mr. Bondi is asking for to split arbitrability issues, they didn't do that there. They rejected that idea. All right. Assume I just still disagree with you, even though you make a very convincing argument. Tell me why you still win here. Why I still win if the judge was not to decide the arbitrability issue? Right. So I agree, assume I agree that the arbitrator was fine determining the scope of arbitrability here. Why do you still win? Why do we still, why should we still affirm the vacator of the arbitration award? For the many reasons you've already discussed, Judge Luck, the claim that Mr. Bondi brought was clearly a claim for benefits. It could not be more clear that it was a claim for benefits under a severance agreement. So as I read Davis, and I think this goes to where your opposing counsel ended, so it's a good place for us to start this conversation. It's not a matter of the claim. It's a matter of the relief sought, right? Isn't that the question that Davis says to focus on? In other words, you can only grant what is asked for for relief. And if you don't ask for attorney's fees, you can't grant relief for attorney's fees. That seems obvious, right? What was the relief that was actually sought here? I think the judge has already identified it very clearly. The relief sought was severance. Right. And was that what was awarded here? What in fact was awarded? The court awarded the severance benefits. They awarded him what he asked for. They added in the arbitrator. I'm sorry. Let me be very clear. The arbitrator awarded severance and interest. Was it severance? I have to say, the arbitrator seemed to award damages for a cause of action related to discrimination. But that seems to be different to me than 36 weeks of pay that you were entitled to. The number, the dollar amount is the same, Your Honor. It's 36 weeks of pay, the very thing that Mr. Bondi asked for in his demand. Then why is that not the same relief then? Why is that not the same relief that he sought? It is the relief that he sought, Your Honor. Right. So how can we say that the arbitrator exceeded her powers by awarding the same thing that he sought? Well, the Davis case, in that case, it was about whether you could award something that was not asked for. And so it's a different case than this case here, Your Honor. Well, I understand that. But that seems to be the basis for, in other words, we have to have a hook under Section 10 for affirming the district court here. The district court relied on exceeding powers. And one of the reasons I thought the district court relied on was the fact that what was awarded here was different than what was asked for in the demand. Do I have that wrong? Well, he didn't ask for attorney's fees. And she awarded some legal fees, even though he purported to be unrepresented. And he didn't ask for interest. And she awarded that. But it's the way she styled the cause of action. As you eloquently put it, Judge Luck, it was fairy dust and mirrors here. The arbitrator never analyzed whether she had the ability to decide arbitrability. Never addressed it. Zero reference to the agreement. And zero reference to the related to language here. So let's talk about that with the time that we have left. So the point the district court made there was, even if the arbitrator could have decided the scope here of what was arbitrable and what was not, here, clearly, in looking at it and reviewing it, the discrimination claim was outside of what was determined to be arbitrable or not. In other words, it clearly fell within the carve out to what was defined as a dispute because this related to the severance package. That's right, Your Honor. Why is that right or wrong? Well, I'm not sure I'm following your question. No, you agree with me the district court said that. District court said that any alleged 510 claim related to the severance claim and therefore was excluded from arbitration. Right. Why is it not, if the arbitrator has the ability to determine scope, why is the arbitrator not allowed to say, well, that's within the scope? For the reasons you've already espoused. That is, there was no evidence whatsoever on the face of his demand that he was alleging discrimination at all. And as the court is aware. It all comes down to that. It comes down to, if we believe, if we read the demand and we agree with the district court that it's clearly outside the demand, then that could have exceeded his powers, exceeded her powers, and be a basis for vacating the arbitration award. Yes, Your Honor. You're not arguing that the demand can't be amended, right? That argument is not before the court, that's correct. But it didn't happen here, Your Honor, to be clear. In fact, nowhere in Mr. Bondi's papers ever does he mention discrimination. The arbitrator found that he had maybe raised an age claim. There was no mention of an age claim anywhere. Well, so this boils down to the fact that we don't have a transcript from the hearing. That's correct, Your Honor. Well, I mean, I'm sorry, let me say, if you look at the demand, there's nothing in that demand which suggests age discrimination. And Mr. Bondi- Which might have provided evidence that the demand had been amended is not here. We don't have a transcript. We do not have a transcript, Your Honor. But as I know that you know, the arbitrator propped up a claim for age discrimination and then said there was no age discrimination. And propped up a claim, which she referred to as a breach of contract claim, but is clearly a claim under ERISA for benefits. And then said, incorrectly, that the reason it was not arbitrable was because he has not followed the appeal procedures. That's not in the language at all. So in any event, the arbitrator did not have the right to decide arbitrability. And everything flowing from that decision, therefore, is a legal nullity. Thank you, Your Honor. I'll submit and ask the court to uphold the district court's decision. Mr. Meyer, you have two minutes on rebuttal. Thank you, Your Honor. I just want to make a couple of quick points. First, I think opposing counsel has conceded that the dollar value of the relief that was awarded is the relief that was sought. So I hope that addresses Your Honor's concern about the relief. I will also say that if you read the language of the award, just at the very beginning, the first full paragraph, at the hearing, claimant presented evidence through witness testimony and exhibits in support of his claims of age discrimination in violation of the Federal Age Discrimination and Employment Act, breach of contract, and violation of the federal ERISA, all arising out of respondent's refusal. So I think the arbitrator does state that that claim was submitted. Of course, it would be nice if we had a transcript. But part of the reason we don't have that information is that NALCO declined to participate. Can't the district court find that to be wrong? In other words, can't the district court look at the record and say, that's just wrong? I mean, I know what they said there, but I have the actual complaint, and it doesn't say anything like that. Your Honor, I don't think so. I think that the Supreme Court and this Court have been very clear that the standard for vacature under Section 10 is just among the most deferential standards to the arbitrator that there is. And so here, where it seems, I think, from the award quite clear that the arbitrator did hear evidence about this kind of claim that Mr. Bondi did indeed present it, that there was indeed notice to NALCO, and that NALCO affirmatively waived its right to appear at the hearing. I just think in all those situations that this incredibly high standard for vacating award under Section 10 is just not met. I would just say very briefly, Your Honor, JPAY and ATIX both find that the arbitrability issue is for the arbitrator. So I think Your Honor is correct in your reading of those cases, that the splitting is resolved in favor of the arbitrator deciding arbitrability. And I would also just say, again, finally, that the structure of the—Your Honor, I am out of time. And so we would just ask that you reverse the district court's opinion. Thank you. We have—excuse me. We have the case under advisement. Thank you both. Thank you.